# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **DESIREE KEYS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:10-CV-02387-SNLJ-NAB** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision

of Michael Astrue ("Defendant") denying the application for a period of disability and disability

insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 - 435, filed by

Desiree Keys ("Plaintiff"). Plaintiff filed a Brief in Support of the Complaint. [Doc. 12].

Defendant filed a Brief in Support of the Answer. [Doc.15]. Plaintiff filed a Reply. [Doc. 16].

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28

U.S.C. § 636(b)(1). [Doc. 9]. For the reasons set forth below, the undersigned recommends that

this matter be reversed and remanded to the Commissioner of Social Security.

## I.
## PROCEDURAL HISTORY

Plaintiff filed an application for benefits on April 25, 2007.[1]  Her claim was denied at the

initial determination level and Plaintiff filed a timely request for a hearing before an

Administrative Law Judge ("ALJ"). (Tr. 29-31).  The ALJ held a hearing and denied the claim in

a written decision dated February 17, 2010.  (Tr. 19-28); (Tr. 9-15).  The Appeals Council

---

[1] Summaries of Plaintiff's applications are included in the administrative record. *See* (Tr. 72-85).

denied Plaintiff's request for review.  (Tr. 1-5).  As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## EVIDENCE BEFORE THE ALJ

### A. Plaintiff's Testimony

Plaintiff's administrative hearing was held on September 28, 2009.  Plaintiff was present and represented by counsel.  Plaintiff provided the only testimony at the hearing.

Plaintiff testified that she was fifty-four years old and completed twelve and half years of school.  (Tr. 21).  She alleged disability beginning on December 7, 2007, when she claims to have had problems with her asthma, back problems, and pain throughout her neck, arms and hands. (Tr. 22).  She stated that she cannot hold things long and she cannot do a lot of things that she used to do.  *Id*.  She also stated that she is "really just hopeless."  *Id*.  She testified that the problems she experiences were at their worst on the day of the hearing.  *Id*.

Plaintiff stated that because of her asthma she is short of breath and unable to walk for a long period of time.  (Tr. 23).  She said that she has to sit down after doing anything and that she is short of breath more than half of the day.  *Id*.  She also stated that she has tightness in her chest**.**  *Id*.  She stays in bed most of the day because of pain and shortness of breath, and she is "always tired."  *Id*.

Plaintiff described the pain in her back as "sharp" and said that "[s]ometimes it triggers down to my toes."  (Tr. 25).  She stated that her left leg is numb and she can't sit back in a chair because of pain.  *Id*.  Plaintiff testified that she has pain in her right hand every day and has difficulty using her right hand.  (Tr. 26-27).  She stated that she would not be able to wash dishes for a long period of time because she cannot "hold or grasp anything too long." (Tr. 27).

Plaintiff began crying at the hearing and testified that she has had problems with crying spells. *Id.* She stated that she forgets "a lot," such as where she put her keys and other things. *Id.* Plaintiff stated that she has worked since she was fifteen years old. *Id.*

**B. Medical Records**

On February 28, 2007, Plaintiff was admitted to the St. Joseph Health Center with complaints of lower abdominal pain and constipation. (Tr. 176). Plaintiff suffered from abdominal bloating and distention associated with nausea, vomiting, and diarrhea. *Id.* She was placed on IV antibiotics and was given IV fluids and analgesics. *Id.* On March 1, 2007, Plaintiff underwent surgery for an exploratory laparotomy and she was found to have a perforated appendix. *Id.* Plaintiff's appendix was removed during the surgery. *Id.* Plaintiff was discharged on March 6, 2007 with instructions to follow up with her surgeon and her primary care physician. *Id.* She received prescriptions for Vicodin, Augmentin, and Albuterol at discharge. *Id.*

On June 12, 2007, Plaintiff visited the St. Joseph Health Center with complaints of lower abdominal pain associated with nausea and vomiting. (Tr. 154). She described the pain as constant, steady, and severe. *Id.* Plaintiff was admitted for further evaluation and treatment. (Tr. 154). On June 13, 2007, while admitted at St. Joseph Health Center, Dr. Daniel J. Bergmann, M.D. ("Dr. Bergmann") held a consultation with Plaintiff. (Tr. 156). He noted that Plaintiff smoked approximately a half a pack of cigarettes per day, she denied any chronic illnesses, and her lungs were clear. *Id.* Dr. Bergmann noted partial bowel obstruction and recommended continued intravenous fluids. *Id.* Plaintiff was administered IV fluids and discharged on June 14, 2007 with a prescription for Percocet. *Id.* The discharge diagnosis included partial small bowel obstruction, history of ruptured appendix with abdominal abscess,

history of post-ileus- in March 2007, gastroesophageal reflux disease, asthma, history of post op anemia, and history of tobacco abuse. *Id*.

On June 17, 2008, Plaintiff visited MEDEX with complaints of asthma, allergies, arthritis, excessive low back pain, pain over the entire right side of the body, and pain in right upper extremity and hand. (Tr. 210). Plaintiff was examined by Dr. Llewellyn Sale, Jr., M.D. ("Dr. Sale"), who noted that Plaintiff stated that she had asthma since 1983. *Id*. Plaintiff stated she was allergic to dust and pollen. *Id*. Plaintiff stated that she had trouble walking more than ¼ of a block and smoked cigarettes. *Id*. Dr. Sale noted that Plaintiff drove herself to the office and walked from the parking lot, although Plaintiff said it took her a long time to do so. *Id*. Dr. Sale also noted that Plaintiff did not use any assistive device to walk. (Tr. 211). Plaintiff told Dr. Sale that she "has trouble with her right hand, all of her fingers, wrists, and radiating up to the elbow and above. The pain from the hand goes even into the back." *Id*. Dr. Sale noted that Plaintiff had no diagnosis or treatment for this complaint. *Id*. Plaintiff reported that she could write and pick up a cup. *Id*. She reported having trouble with jar tops sometimes and that she had difficulty with buttoning a blouse, but could do it. *Id*. Plaintiff stated that she "[p]robably could not lift more than 2 or 3 pounds over her head[.]" *Id*.

Dr. Sale noted that "[p]ercussion was normal." *Id*. "There [was] no prolongation of expiratory phase, and there [were] rhonci and scattered wheezes throughout all lung fields." *Id*. Plaintiff had tenderness over the entire lower abdomen and extreme tenderness was present over the entire spine, particularly in the lumbar area and slight tenderness in the thoracic and cervical spine areas. *Id*. Dr. Sale noted decreased range of motion primarily in the lumbar spine and slight decreased range of motion in the right upper extremity. *Id*. Dr. Sale found no joint abnormality. *Id*. Plaintiff's gait was normal, but very slow, and heel and toe walking was done

very poorly. *Id.* Squatting was done minimally and "[k]nee flexion [was] not appreciably decreased." *Id.* Dr. Sale noted that Plaintiff's fine finger control was normal and Plaintiff complained "bitterly" about pain with any movement, including getting on and off of the examining table, and with bending and squatting. *Id.* Dr. Sale's clinical impression was bronchial asthma with allergic factors and degenerative disc disease in the lumbar spine. *Id.*

An x-ray of Plaintiff's chest taken on June 17, 2008 revealed normal mediastinal contours and a normal cardiac-pericardiac silhouette. (Tr. 214). Plaintiff's lungs were noted as being clear and bones were noted as normal. *Id.* A June 18, 2008 x-ray of Plaintiff's lumbar spine revealed "marked narrowing of her L5-S1 intervertebral disc space." (Tr. 213). Alignment was found to be satisfactory. *Id.*

On June 26, 2008, Medical Consultant Abby Mobley ("Mobley") performed a Physical Residual Functional Capacity Assessment on Plaintiff. (Tr. 221). Mobley noted Plaintiff could occasionally lift and/or carry approximately 20 pounds; frequently lift and/or carry approximately 10 pounds; to stand and/or walk (with normal breaks) at least 2 hours in an 8-hour workday; sit (with normal breaks) for a 6 hours in an 8-hour workday; and her ability to push and/or pull was unlimited, other than the limitations shown for lift and/or carry. *Id.* Mobley noted that Plaintiff had difficulty breathing, congestion and labored breathing. *Id.* Additionally, Plaintiff had not gone to the doctor recently because she had no insurance money to go and was [during the assessment] upset about her terminally ill aunt. *Id.*

Mobley noted that Plaintiff could occasionally, climb ramps and stairs, but never ladders, rope or scaffolds. (Tr. 224). Plaintiff could occasionally balance, stoop, kneel, crouch, and crawl. *Id.* Plaintiff suffered no manipulative, visual, or communicative limitations. (Tr. 224-

25). Mobley noted that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, and vibration; and avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 225). Mobley imposed no limitations for exposure to wetness, humidity, noise, machinery, and heights. *Id*. Additionally, Mobley noted that Plaintiff gave poor effort on motor strength testing and she determined that Plaintiff was only partial credible. *Id*.

On August 18, 2008, Plaintiff complained to doctors at Volunteers in Medicine that her asthma had been bothering her all year. (Tr. 231). She also complained of pain in her chest, arms, legs and back. *Id*. She stated that back pain was getting worse and that she was unable to work. *Id*. Doctors planned an MRI of the lumbar spine. *Id*.

On September 10, 2008, Plaintiff complained of continuing back pain to doctors at Volunteers in Medicine. (Tr. 230). She also reported that her knees were painful and that they "give out" on her. *Id*. She reported that she was still wheezing and she felt that the medicine prescribed was not working. *Id*. It was noted that Plaintiff's hands were hurting and that she could not type. *Id*. She tested positive for Tinnel's sign in both wrists. *Id*. It was also noted that Plaintiff had degenerative arthritis of the spine and asthma. *Id*.

On October 22, 2008, Plaintiff reported having constant pain in her right hand and fingers to doctors at Volunteers in Medicine. (Tr. 228). She claimed she could not lift a coffee pot, and that the pain began in May of 2006. *Id*. Doctors noted that there was no joint swelling and the cause of the pain was undetermined. *Id*. An MRI of the right wrist was suggested. *Id*. Plaintiff also complained of back pain. *Id*.

On November 6, 2009, Thomas J. Spencer, Psy.D. ("Dr. Spencer") performed a psychological evaluation of Plaintiff. (Tr. 240). Plaintiff was referred to Dr. Spencer to assist

in the determination of eligibility for Social Security disability benefits. *Id*. The referral source requested an Organicity Evaluation ("Individual Psychological Consultation," Wechsler Adult Intelligence Scale-III , Wechsler Memory Scale-III , and Trail Making Test ("TMT") Parts A & B) and Minnesota Multiphasic Personality Inventory-2, and asked the evaluator to complete a Medical Source Statement of Ability to do Work-Related Activities (Mental). *Id*.

Plaintiff's chief complaint was "I'm impaired." *Id*. Dr. Spencer stated that Plaintiff complained that she "experiences 'a lot' of health problems including asthma and back pains." Dr. Spencer noted claims of anger, frustration, trouble falling asleep, tempers with yelling, screaming, and throwing things, and that she "cries 'every day and every night.'" *Id*. Plaintiff reported feeling "hopeless, helpless, and worthless." *Id*. She reported a history of suicidal ideation but denied any current thoughts. (Tr. 241). Plaintiff cried while recounting having put a knife to her chest during the previous week. *Id*. Dr. Spencer noted Plaintiff's problems with sleep, lack of energy and motivation, and a poor appetite. *Id*. Plaintiff denied any anger/depression prior to her health deteriorating and Dr. Spencer found no history of mania or psychosis. *Id*.

Dr. Spencer noted that Plaintiff had never seen a psychiatrist or psychologist nor had she been prescribed any psychotropic medication. *Id*. There was no history of traumatic brain injury, seizures, mental illness, or substance abuse. *Id*. Plaintiff denied drug and alcohol abuse in the present or past. *Id*. Dr. Spencer reported Plaintiff's daily functioning included days at home in bed, she cannot help around the home, and has no hobbies or interests. *Id*.

The mental status exam revealed no impairment in Plaintiff's grooming or hygiene, no evidence of physical distress and she ambulated without assistance. *Id*. Dr. Spencer found no

unusual motor behaviors or mannerisms observed. (Tr. 241-42). Plaintiff's insight and judgment were reported intact, she was alert and oriented, and no response to internal stimuli or delusional beliefs was elicited. (Tr. 242).

Plaintiff obtained a Full Scale IQ of 67 on the WAIS-III, which was the 1st percentile or extremely low range of intellectual functioning. *Id*. Plaintiff appeared motivated during this test "but looked to put forth less than full effort." *Id*. Dr. Spencer did not believe that the scores were an accurate representation of Plaintiff's present level of functioning. *Id*.

Dr. Spencer noted that Plaintiff appeared motivated and "looked to put forth better effort" on the memory function testing, the WAIS-II. *Id*. Plaintiff obtained a General Memory Index of 82, or 12th percentile and a Working Memory Index of 74, or 4th percentile. (Tr. 243). "Auditory and Visual Immediate [memory] were Borderline and Average respectively while Auditory and Visual Delayed [memory] were Low Average and Average respectively." *Id*. Auditory recognition memory was low average. *Id*.

TMT tests are generally considered a measure of speed for attention, sequencing, mental flexibility, and of visual search and motor function. *Id*. Plaintiff obtained a Part A time of 50.04 seconds with no errors and Part B time of 184.81 seconds with three errors. *Id*. "Part A [results] falls a standard deviation from the mean and Part B [results] falls three standard deviations from the mean (Part A mean=35.1 SD=10.6 and Part B mean=77.7 SD=23.8)." *Id*.

The MMPI-2 is a standardized questionnaire designed to elicit a wide-range of self-descriptions and provide a quantitative measurement of an individual's level of emotional adjustment and attitude toward test taking. *Id*. Dr. Spencer noted that according to validity

scales, Plaintiff may have mildly exaggerated so the results of the test should be viewed with caution. *Id*. Dr. Spencer noted:

> Individuals with a similar code (2/6) demonstrate sensitivity to real or imagined criticism. Minor criticisms are dwelled on and there is usually a long history of interpersonal difficulties. Others describe them as resentful, hostile, and aggressive. These individuals often reject others, which results in general avoidance by others.

*Id*. Dr. Spencer's diagnostic formulation of Plaintiff included diagnoses of Adjustment disorder and Major depressive disorder. *Id*. Plaintiff had a GAF of 55-60. *Id*.

Dr. Spencer completed a Medical Source Statement of Ability To Do Work-Related Activities (Mental). (Tr. 246-48). Dr. Spencer noted that Plaintiff's ability to understand, remember, and carry out instructions is affected by Plaintiff's impairment. (Tr. 246). Dr. Spencer reported that there was no impairment in understanding and remembering simple instructions or carrying out simple instructions. *Id*. There was mild impairment in the ability to make judgments on simple work-related decisions. *Id*. Dr. Spencer noted moderate impairment in Plaintiff's ability to understand and remember complex instructions, and carry out complex instructions. *Id*. Dr. Spencer also noted moderate impairment in Plaintiff's ability to make judgments on complex work-related decisions. *Id*.

Dr. Spencer also noted that Plaintiff's ability to interact appropriately with supervision, co-workers, and the public, as well as respond to changes in the routine work setting is affected by her impairments. (Tr. 247). Dr. Spencer specifically noted mild impairment in Plaintiff's abilities to interact appropriately with the public, interact appropriately with supervisors, and to interact with co-workers. *Id*. Dr. Spencer found moderate impairment in Plaintiff's ability to respond appropriately to usual work situations and to changes in a routine work setting. *Id*. Lastly, Dr. Spencer noted that the Plaintiff can manage individual benefits in her own interest.

*Id.* The form completed by Dr. Spencer defined "moderate" as "[t]here is more that a slight limitation in this area but the individual is still able to function satisfactorily." (Tr. 246). "Mild" is described as "[t]here is a slight limitation in this area, but the individual can generally function well." *Id.*

**C. Reports**

Plaintiff completed a Disability Report Form. (Tr. 95-103). She also submitted a Work History Report, (Tr. 107-18), and a Missouri Supplemental Questionnaire. (Tr. 119-26).

**III.**

**ALJ DECISION**

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2011 and Plaintiff has not engaged in substantial gainful activity since December 7, 2007, the alleged onset date. (Tr. 11). He concluded that Plaintiff has the severe impairments of asthma, degenerative arthritis of the spine, adjustment disorder with depression, and anxiety, however, none of the impairments or combination of impairments meet or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13). The ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that Plaintiff would have moderate limitations in performing complex work tasks requiring the comprehension of and carrying out of multi-step directions. *Id.* Finally, the ALJ concluded that Plaintiff is capable of performing her past relevant work as a data entry/office clerical worker as it is generally performed. (Tr. 15). The ALJ therefore determined that Plaintiff has not been under a disability, as defined by the Social Security Act, since her alleged onset date. *Id.*

**IV.**

**LEGAL STANDARDS**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). Under the Social Security Act, the Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). The burden of persuasion to prove disability remains with the claimant throughout the evaluation process. *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) (citation omitted); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

In this sequential analysis, first, the claimant cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." *Id*. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.[2] 20 C.F.R. §§ 416.920(e), 404.1520(e). At this step, the burden rests with the claimant to establish his or her Residual Functional Capacity ("RFC"). *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008). *See also Eichelberger*, 390 F.3d at 590-91; *Masterson*, 363 F.3d at 737. RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. §§ 404.1520(f), 416.920(f). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the analysis proceeds to Step V.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. § 416.920(g). At this step, the Commissioner bears the

---

[2] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Goff*, 421 F.3d at 790; *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled.

This court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed

because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617; *Guillams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004) (citing *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). The factual findings of the ALJ are conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g). The district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980); *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989). Additionally, an ALJ's decision must comply "with the relevant legal requirements." *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

# V.
# DISCUSSION

Plaintiff raises two points of error in arguing that the ALJ's decision is not supported by substantial evidence. First, Plaintiff contends that the ALJ's conclusion at Step Four that she could return to her past relevant work is not supported by substantial evidence. Second, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. The undersigned will address Plaintiff's points of error in the order presented.

## A. ALJ's conclusion that Plaintiff could return to past relevant work

Plaintiff argues that the ALJ erred by failing to comply with SSR 86-62, which requires the ALJ to make certain findings of fact when determining that an individual has the capacity to perform past relevant work. Plaintiff also argues that the ALJ erred by failing to make explicit findings as to the physical and mental demands of her past relevant work.

SSR 86-62 states that "[t]he decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision." SSR 82-62, 1982 WL 31386 at *3. "Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." *Id*. SSR 82-62 goes on to explain:

In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:

> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation

*Id*. at *4.

The Eighth Circuit has consistently held that SSR 82-62 requires an ALJ to "fully investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before [the ALJ] determines that [the claimant] is able to perform her past relevant work." *Groeper v. Sullivan*, 932 F.2d 1234, 1238 (8th Cir. 1991) (emphasis added in original) (quoting *Nimick v. Sec. of Health and Human Servs*., 887 F.2d 864, 866 (8th Cir. 1989)); *see also Kirby v. Sullivan*, 923 F.2d 1323, 1326 (8th Cir. 1991). The *Groeper* court cautioned that an ALJ's failure to fulfill this obligation *requires* reversal. *Groeper*, 932 F.2d at 1238 (emphasis added) (citing *Kirby*, 923 F.2d at 1327); *but see Battles v. Sullivan*, 902 F.2d 657, 658-59 (8th Cir. 1990) (Failure to make explicit findings regarding a claimant's past relevant work was not reversible error where the claimant failed to produce any medical evidence that established a disability before the expiration of her insured status).

The *Groeper* court fully explained the analysis that the ALJ must perform in evaluating whether a claimant can perform past relevant work. The court explained:

> An ALJ's decision that a claimant can return to his past work must be based on more than conclusory statements. The ALJ must specifically set forth the claimant's limitations, both physical and mental, and determine how those limitations affect the claimant's residual functional capacity. The ALJ must also make explicit findings regarding the actual physical and mental demands of the claimant's past work. Then, the ALJ should compare the claimant's residual functional capacity with the actual

demands of the past work to determine whether the claimant is capable of performing the relevant tasks. *See Kirby v. Sullivan*, 923 F.2d 1323, 1326-27 (8th Cir. 1991). A conclusory determination that the claimant can perform past work, without these findings, does not constitute substantial evidence that the claimant is able to return to his past work. *Id*. at 1327.

*Groeper*, 932 F.2d at 1238-39.   In *Groeper*, the ALJ found that the claimant "was able to perform simple repetitive tasks that have only minimal memory requirements," and without setting forth the physical and mental demands of the claimant's past work, the ALJ concluded that the claimant maintained the capacity to perform his past work as a bus boy and baker's helper. *Groeper*, 932 F.2d at 1239.   Although the record contained evidence regarding the physical demands of the claimant's past work, the ALJ did not mention any specific physical demand of the claimant's past work. *Id*.   Further, the court noted that the record lacked any evidence regarding the mental demands of claimant's past work. *Id*.   The court therefore found that "[t]he ALJ failed to fully investigate and make findings regarding either the demands of [the claimant's] past work or [the claimant's] capabilities[] [and] [t]hus, he did not properly evaluate [the claimant's] ability to perform past work." *Id*.

Similar to *Groeper*, the ALJ in the present case did not set forth the physical and mental demands of Plaintiff's past work, but nevertheless concluded that Plaintiff maintained the capacity to perform her past work.   The ALJ found only that Plaintiff could perform her past work as "generally performed."   Although one of the tests set forth in SSR 82-61 for determining whether a claimant retains the capacity to perform past relevant work utilizes essentially this same standard, the test does not relieve an ALJ of his obligation to comply with the requirements of SSR 82-62.   In fact, the test that uses the "generally performed" standard states that the "Dictionary of Occupational Titles ("DOT") descriptions can be relied upon--for jobs that are listed in the DOT -- to define the job as it usually performed in the nationally economy." SSR

82-61 at *2. Therefore, it is clear that, even when applying the "generally performed" standard to determine whether a claimant can perform past work, evidence relating to the specific demands of the claimant's past work must be considered.

Defendant seems to suggest that the ALJ relied on the DOT, however, the ALJ's decision does not indicate such reliance. The ALJ did not cite to or make any reference to the DOT. Also, the record lacks any evidence from a vocational expert referencing the DOT. *See Pfitzner v. Apfel,* 169 F.3d 566, 568-69 (8th Cir. 1999) (Finding no express reference to the DOT in ALJ's decision, the court refused to find that ALJ implicitly relied on the DOT in determining that the claimant could perform past work).

SSR 82-62 mandates that the ALJ make specific findings of fact regarding the physical and mental demands of Plaintiff's past work. Here, the ALJ failed to make such findings, and the Eighth Circuit has made clear that absent such findings, any decision that a claimant can perform past relevant work is not supported by substantial evidence. *See Groeper*, 932 F.2d at 1238-39*; Pfitzner,* 169 F.3d at 569. Therefore, the undersigned finds that the ALJ's decision that Plaintiff can perform past relevant work is not supported by substantial evidence. The undersigned therefore recommends that this cause be remanded.

It is recommended that, upon remand, the ALJ should comply with SSR 82-62. The ALJ should first make an RFC determination. The ALJ should then consider relevant evidence and make explicit findings as to the physical and mental demands of Plaintiff's past relevant work. SSR 82-62. Lastly, the ALJ should apply one of the three tests set forth in SSR 82-61 to determine whether Plaintiff retains the capacity to perform her past relevant work. SSR 82-61.

**B. ALJ's RFC Determination**

When analyzing the RFC, "the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citing *Ingram v. Chater,* 107 F.3d 598, 604 (8th Cir.1997)).  It is not enough for an ALJ to simply describe a claimant's RFC in general terms and fail to specify the details of the claimant's RFC.  *See Pfitzner,* 169 F.3d at 568-69.  Social Security Ruling 96-8p requires the ALJ to conduct a function-by-function assessment before expressing a claimant's RFC in terms of exertional levels.  SSR 96-8p, 1996 WL 374184 at *1.  The ruling cautions that a failure to conduct the function by function assessment "could result in the adjudicator overlooking some of an individual's limitations or restrictions."  *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) (citing SSR 96-8p, 1996 WL 374184 at *1).

In *Pfitzner,* the Eighth Circuit determined, under similar circumstance as presented here, that the ALJ's RFC determination was not supported by substantial evidence.  *Pfitzner,* 169 F.3d at 568.  There, the ALJ found that the claimant could perform a wide range of medium work and could therefore return to his past relevant work.  *Id*. at 568.  The court noted that "the ALJ never specifically articulated [the claimant's] residual functional capacity, rather he described it only in general terms."  *Id*.  The court noted that despite discussing the relevant evidence, the ALJ "articulated only the outermost contours of [the claimant's] residual functional capacity[,]"and that the claimant's physical limitations, unlike his mental limitations, were not easily discernible from the ALJ's decision.  *Id*.  The court explained that "[w]hile it is clear the that ALJ found [the claimant's] mental problems moderate . . ., the specifics of [the claimant's] physical limitations are not so easily gleaned from the ALJ's decision." *Id*.

Here, similar to the *Pfitzner*, the undersigned has no issue with the ALJ's finding that Plaintiff had only moderate mental limitations.  The only medical evidence in the record that

mentions any specific mental limitations, Dr. Spencer's report, states that Plaintiff had only moderate limitations in her ability to understand and remember complex instructions, carry out complex instructions, and the ability to make judgments on complex work-related decisions. (Tr. 246). There is no evidence in the record indicating that Plaintiff has more severe mental limitations than what Dr. Spencer indicated in his report, and what the ALJ included in the RFC determination.[3]

However, similar to *Pfitzner*, the Undersigned takes issue with the lack of specific findings regarding physical limitations contained in the RFC analysis. The ALJ expressed Plaintiff's RFC initially in terms of an exertional level, stating that Plaintiff has the RFC to perform light work as defined by 20 C.F.R. 404.1567(b). The ALJ never set forth the specific physical limitations or medical evidence that caused him to conclude that Plaintiff is limited to performing light work. *See Lewis*, 353 F.3d at 646 (ALJ must set forth specifically claimant's limitations). Despite acknowledging that Plaintiff has the severe physical impairments of asthma and degenerative arthritis of the spine, the ALJ did not mention any functional limitations associated with either of these conditions. *See Pfitzner,* 169 F.3d at 568 (noting that the ALJ's decision failed to identify physical limitations despite acknowledging that the claimant suffered from arthritis.).

As indicated by *Pfitzner*, the ALJ's failure to set forth specific physical limitations in the present case is especially critical given the overall determination that Plaintiff could perform her past relevant work. A determination that a claimant can return to past relevant work requires a finding that the claimant maintains the ability to satisfy the physical and mental demands of the

---

[3] Dr. Spencer defined "moderate" as meaning that there was "more than a slight limitation . . . but the individual is still able to function satisfactorily." (Tr. 246). The undersigned does not imply that Dr. Spencer's definition of "moderate" conclusively establishes that Plaintiff can satisfy the mental demands of her past relevant work. The ALJ must still compare the specific demands of Plaintiff's past work to the mental limitations that she has. SSR-82-62.

past work. *Groeper*, 932 F.2d at 1238-39. It is obvious that the ALJ found that Plaintiff has at least some physical functional limitations because he limited her to performing only light work, and by definition, light work encompasses certain physical limitations. *See* 20 C.F.R. 404.1567. However, without acknowledging and examining the specific physical limitations that Plaintiff has, it is impossible to conduct the appropriate analysis. Plaintiff's present functional ability to meet the physical demands of her past work cannot be assessed absent consideration of her present physical limitations. Therefore, the ALJ must set forth and consider those limitations.

The undersigned recommends that this matter be remanded to the ALJ in order for Plaintiff's RFC to be re-assessed. The ALJ should set forth Plaintiff's limitations and determine how those limitations affect her RFC. *See Lewis*, 353 F.3d at 646 (citing *Ingram,* 107 F.3d at 604). The ALJ should then compare Plaintiff's RFC to the physical and mental demands of her past work to determine whether she maintains the ability to satisfy those demands. *Groeper*, 932 F.2d at 1238-39.

## VI.
## CONCLUSION

For the reasons set forth above, the undersigned finds that substantial evidence on the record as a whole does not support the Commissioner's decision that Plaintiff is not disabled.

The undersigned recommends that this matter be reversed and remanded to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. 405(g), sentence 4. Upon remand, the ALJ should be directed to re-examine the record in a manner consistent with this report and recommendation. By recommending that this matter be reversed and remanded, the undersigned does not imply that the Commissioner should return a finding of

"disabled." The undersigned is only of the opinion that the Commissioner's final determination, as it presently stands, is not supported by substantial evidence on the record as a whole.

**ACCORDINGLY,**

**IT IS HEREBY RECOMMENDED** that the relief which Plaintiff seeks in his Complaint and Brief in Support of Complaint be **GRANTED** in part, and **DENIED**, in part. [Doc. 1]; [Doc. 12].

**IT IS FURTHER RECOMMENDED** that the Plaintiff's request that this matter be reversed and remanded for reconsideration be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's request that the Court find that Plaintiff is entitled to benefits and direct the Commissioner to pay such benefits be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Judgment of Reversal and Remand be issued pursuant to 42 U.S.C. 405(g), sentence 4 remanding this case to the Commissioner of Social Security for further consideration consistent with this report and recommendation.

**IT IS FURTHER RECOMMENDED** that the Court order the ALJ, on remand, to re-assess Plaintiff's RFC in a manner consistent with this report and recommendation.

**IT IS FURTHER RECOMMENDED** that the Court order the ALJ, on remand, to re-assess whether Plaintiff can return to her past relevant work. in a manner consistent with this report and recommendation.

The parties are advised that pursuant 28 U.S.C. § 636(b)(1) they have fourteen days in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained, and that a failure to file timely objections may result in waiver of the right to appeal questions of fact.

Dated this <u>8th</u> day of December, 2011.


     /s/ Nannette A. Baker
_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE